UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CREDIT UNION LIQUIDITY ) <br> SERVICES, LLC f/k/a TEXAN ) <br> COMMERCIAL CAPITAL, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> VS. ) <br> ) <br> COASTAL FEDERAL CREDIT UNION, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. <br><br> 3:09-CV-0817-G <br><br> **ECF** |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Coastal Federal Credit Union ("Coastal"), to dismiss the complaint of the plaintiff, Credit Union Liquidity Services LLC, f/k/a Texans Commercial Capital LLC ("CULS"), for lack of personal jurisdiction (docket entry 6). For the reasons set forth below, the motion is denied.

I. BACKGROUND

CULS is a Texas limited liability company, wholly owned by Texans Credit Union ("Texans CU"), with its principal place of business in Richardson, Texas. *See* Plaintiff's Original Complaint ("Complaint") at 1; Brief in Support of Defendant's Special Appearance Motion to Dismiss for Lack of Personal Jurisdiction ("Brief in

Support") at 4. Coastal is a credit union, organized under the laws of the United States, with its principal place of business in Raleigh, North Carolina. Brief in Support at 4.

In 2006, CULS and Coastal began discussing the possibility of Coastal purchasing participation rights in some of the construction loans that CULS had originated. Plaintiff's Response to Defendant's Special Appearance to Assert Motion to Dismiss for Lack of Personal Jurisdiction ("Response") at 2. During the period of negotiation, the parties engaged in many telephone and email conversations between North Carolina and Texas. *Id.* As part of the negotiations between the parties, Coastal sent its vice-president, Peter VanGraafeiland, and a consultant, James R. Graham, to Richardson, Texas, to inspect CULS's operations. *Id.* at 3. This trip occurred on May 18 and 19, 2006. *Id.*

After the trip by Coastal representatives to Texas, negotiations continued between Coastal in North Carolina and CULS in Texas. *Id.* CULS claims that as these negotiations progressed, VanGraafeiland made it clear to CULS's president, James (Jay) Champion, that Coastal was looking to establish a long-term business relationship. Affidavit of James C. (Jay) Champion ("Champion Affidavit"), *attached to* Response at App. 005. Coastal maintains, however, that it was not interested in a long-term relationship and was hoping to keep its risk to no more than two to four years. Affidavit of Peter VanGraafeiland dated Sep. 8, 2009 ("VanGraafeiland

Affidavit"), *attached to* Brief in Support at App. 5. The relationship between the parties has lasted about three and a half years. Response at 1.

On August 30, 2006, the parties entered into a few different loan participation agreements through which Coastal invested $20 million in construction loans on four different projects. *See* Brief in Support at 5; Response at 3-4. After receiving the principal back on three of its agreements, Coastal bought interests in loans on three more projects. Brief in Support at 5. Two of the participation agreements entered into on August 30, 2006, were for a loan that CULS had made to Realty American Group (Lincoln Mall), LP (the "Lincoln Mall PA") and for a loan that CULS had made to Berringer Harvard Mockingbird Commons, LP (the "Mockingbird Commons PA"). Response at 3-4. These two participation agreements are the subject of this case. *See* Complaint at 4-5.

The participation agreements at issue each have the following provision as their paragraph 38:

> THE OBLIGATIONS OF EACH OF THE PARTIES
> HEREUNDER ARE PERFORMABLE IN DALLAS
> COUNTY, TEXAS, AND THE LAWS AND
> REGULATIONS OF THE STATE OF TEXAS AND OF
> THE UNITED STATES OF AMERICA SHALL GOVERN
> THE RIGHTS AND DUTIES OF THE PARTIES
> HERETO AND THE VALIDITY, CONSTRUCTION,
> ENFORCEMENT AND INTERPRETATION HEREOF.

Realty America Group (Lincoln Mall), LP Participation Agreement ("Lincoln Mall PA"), *attached to* Response at App. 043; Mockingbird Commons, LP

Participation Agreement ("Mockingbird Commons PA"), *attached to* Response at App. 073.  Despite this clause, Coastal contends that the only performance in Texas under these agreements was its wiring of funds to CULS.  Reply of Defendant, Appearing Specially, Addressing Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Reply") at 8-9.  As payments on the loans come in, Coastal argues, CULS performs by distributing to Coastal in North Carolina its share of the payment, which is based on the participation interest that Coastal owns.  Brief in Support at 7.

CULS brings this suit against Coastal to recover overpayments that it made to Coastal on the Lincoln Mall PA and the Mockingbird Commons PA.  Complaint at 4-5.  It also seeks declaratory judgment to the effect that CULS is allowed, under the agreements, to alter the original loans without Coastal's consent.  *Id.* at 5-6.  Coastal now moves to dismiss the action for lack of personal jurisdiction pursuant to the Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Defendant's Special Appearance to Assert Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss") at 1.

## II.  ANALYSIS

### A.  The Factual Standard:  A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's

jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B. The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id.* Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia*, S.A., 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

### C. Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures

that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the

forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16. CULS is not arguing that Texas has general jurisdiction over Coastal, asserting instead that Coastal has sufficient minimum contacts with the forum, related to the instant litigation, to allow the exercise of specific jurisdiction. Response at 7.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a

substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); *see also Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

D.  Discussion

1.  *Minimum Contacts*

There is a significant connection between Coastal, Texas, and CULS's claims that permits the exercise of specific jurisdiction in this case. CULS has provided three affidavits in support of its *prima facie* case. *See, e.g.*, Champion Affidavit; *see also* Affidavit of Timothy James (TJ) Smith, *attached to* Response at App. 001; Affidavit of

Nick Fennell, *attached to* Response at App. 021. CULS has also provided copies of three different participation agreements, the Lincoln Mall PA, the Mockingbird Commons PA, and the Mountain Village, LLC Participation Agreement ("Mountain Village PA"). These agreements, pursuant to paragraph 38, contemplated further action, which would all be "performable in Dallas County, Texas." Lincoln Mall PA at App. 043; Mockingbird Commons PA at App. 073; Mountain Village, LLC Participation Agreement ("Mountain Village PA"), *attached to* Response at App. 102.

The sum of the defendant's contacts with the forum state, when considered both qualitatively and quantitatively, are sufficient to allow the exercise of specific jurisdiction in Texas. One of the most significant contacts in this case is that Coastal sent its representatives to Texas as part of the negotiation process. Brief in Support at 5; Response at 3. It is also significant that Coastal entered into a contractual relationship with CULS, knowing that CULS was a resident of Texas, and that the relationship has lasted more than three and a half years. Response at 1. Coastal has communicated extensively with CULS in Texas. *See*, *e.g.*, Response at 3; Brief in Support at 5, 7. Coastal also chose to further its relationship with CULS by executing additional agreements after the ones entered into on August 30, 2006. Brief in Support at 5. Coastal has wired payments into the state of Texas. Reply at 8-9. Finally, the agreements that Coastal entered into with CULS choose Texas as the applicable law and establish that all obligations are "performable" in Texas.

Lincoln Mall PA at App. 043; Mockingbird Commons PA at App. 073; Mountain Village PA at App. 102.

Coastal is probably correct in asserting that some of these contacts, standing alone, would not be sufficient to meet the minimum contacts standard. *See* Reply at 3, 8, 9; Brief in Support at 14, 15. This case, however, is not about each of those contacts in isolation. The number and nature of contacts that Coastal has with the state of Texas, when considered together, are more than sufficient for specific jurisdiction.

Coastal purposefully entered into a continuing relationship with CULS that has lasted several years. Response at 1. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Association v. Virginia*, 339 U.S. 643, 647 (1950)). Coastal's contacts with Texas, from which this suit arises, are not "random," "fortuitous," or "attenuated." See *Burger King*, 471 U.S. at 475. By entering into a continuing relationship with CULS, a resident of Texas, Coastal was purposefully availing itself of the privileges and protections of doing business in Texas. This availment should have alerted Coastal to the possibility that

it might be haled into court in Texas to answer complaints related to this extended contractual relationship.[1]

In arguing that it does not meet the minimum contacts standard, Coastal relies heavily on two Fifth Circuit cases. The first of those cases is *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.* 700 F.2d 1026 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984). In *Hydrokinetics*, the court found that the defendant lacked the necessary minimum contacts with Texas to support personal jurisdiction even though the defendant had sent two representatives into the state as part of the negotiation process. *Id.* at 1028-29. The facts of *Hydrokinetics*, however, are distinguishable from the instant case. *Hydrokinetics* centered on a "single, isolated transaction" that the defendant, Alaska Mechanical, was involved in. *Id.* at 1029. Apart from that transaction, Alaska Mechanical had no contact with Texas. *Id.* Also, the agreement at issue in that case was governed by Alaskan law. *Id.* No performance took place in Texas, with the possible exception of delivering money to Hydrokinetics for the purchased goods. *Id.* All of these facts distinguish *Hydrokinetics* from this case. The

---

[1] While VanGraafeiland claims that Coastal had no intention of entering into a long-term relationship, VanGraafeiland Affidavit at App. 5, the continuation of the relationship for three and a half years, combined with Coastal's decision to enter into additional agreements with CULS, would suggest otherwise. Response at 1; Brief in Support at 5. Even if the court were to credit VanGraafeiland's statement, in determining whether or not the plaintiff has made a *prima facie* showing, the court is obligated to favor the plaintiff on all disputed facts. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. The plaintiff has offered evidence suggesting that VanGraafeiland made it known to a CULS official that Coastal was looking for a long-term contractual relationship with CULS. *See* Champion Affidavit at App. 005.

contacts at issue in this case go beyond a single dealing between the parties. While there is no suggestion that Coastal had any contacts with Texas other than those related to CULS, it is clear that Coastal's relationship with CULS extended beyond a one-time purchase of goods. Coastal purchased participation rights from CULS on more than one occasion. *See* Brief in Support at 5. The two parties continued their contractual relationship for more than three years. Response at 1. Significant too is the fact that the agreements at issue here are governed by Texas law. Lincoln Mall PA at App. 043; Mockingbird Commons PA at App. 073; Mountain Village PA at App. 102. It is even more significant that the agreements establish that they are performable in Texas. *Id.* The agreements at issue in this case are substantially more related to Texas than the agreement in *Hydrokinetics*. These differences are key to the exercise of specific jurisdiction.

In *Stuart*, the second case relied on by Coastal, the court determined that it did not have personal jurisdiction over the defendant even if the ambiguous choice of law clause named Texas as the source of the governing law. 772 F.2d at 1195-96. That case is also distinguishable from Coastal's situation. To begin with, the choice of law clause was ambiguous because it made controlling "the law of the state in which the 'aggrieved party' is residing at the time of the breach or grievance." *Id.* at 1194. The defendant, Spademan, made contact with the state by shipping ski bindings into Texas. *Id*. at 1193. The court concluded that the shipment of goods into the state,

alone, is not enough. *Id.* The only other contacts that Spademan had with Texas were the delivery of payments into the state and communications with the plaintiffs in Texas. *Id.* at 1193-94. Coastal had considerably more contact with Texas in the course of its dealings with CULS. While the court recognizes that the number of contacts is not the determining factor in minimum contacts analysis, "it is indeed one of the relevant factors to be considered within the totality of the circumstances." *Id.* at 1192. Coastal sent representatives to visit Texas. Brief in Support at 5; Response at 3. It entered into agreements that were performable in Texas. Lincoln Mall PA at App. 043; Mockingbird Commons PA at App. 073; Mountain Village PA at App. 102. Most importantly, in continuing its relationship with CULS for a period of years and purchasing additional participation rights, Coastal established a continuing relationship with CULS. Brief in Support at 5; Response at 1. While the plaintiffs in *Stuart* had obligated themselves to "aid in effectuating a reissuance of the original patent," they did not contemplate the same sort of continuing obligation that Coastal took on by continuing and expanding its relationship with CULS beyond the original obligations. *Stuart*, 772 F.2d at 1194. These additional contacts make Coastal's agreements far more connected to Texas than Spademan's.

Coastal also suggests that it fails to meet the minimum contacts standard because a large portion of the contemplated performance was to take place outside of Texas. Reply at 8-9. This argument is curious in light of the fact that Coastal took a

significant amount of time to make substantial changes to the draft agreement that CULS sent originally. *Id.* at 3-4. If it is true that so much of the parties' performance was to take place outside of Texas, why would Coastal choose, with all of the changes that it made to other parts of the agreement, to leave in the section of paragraph 38 establishing that the agreement is performable in Texas?

While each of Coastal's contacts with Texas, considered individually, might not be enough to permit the exercise of specific jurisdiction over Coastal in Texas, those contacts, taken together, are sufficient to satisfy the minimum contacts standard.

2. *Fair Play and Substantial Justice*

To determine whether personal jurisdiction comports with fair play and substantial justice, the court must examine a number of factors, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). "[O]nce minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F.Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471

U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Coastal has not made a compelling case to establish that specific jurisdiction in this case would not comport with traditional notions of fair play and substantial justice. While Coastal calls the use of such jurisdiction in this case "unfair," Reply at 10, it has not shown that this case falls into the set of rare cases referred to in *Enviro Petroleum*.

There would, in all likelihood, be some burden placed on Coastal if it is forced to defend itself in Texas. As the court has already noted, Coastal's primary place of business is in North Carolina. This burden, however, is outweighed by the interest of Texas in adjudicating this matter, particularly considering that the agreements at issue are governed by Texas law. CULS is a resident of Texas, so Texas has an interest in ensuring that its residents can seek relief here. This, combined with CULS's interest in receiving convenient and effective relief, outweighs any burden that Coastal might face.

Because any burden placed on the defendant in this case is outweighed by the state's interest in the matter and by the plaintiff's interest in receiving convenient and

effective relief, the exercise of specific jurisdiction in this case comports with traditional notions of fair play and substantial justice. The court, therefore, concludes that the exercise of specific jurisdiction is appropriate in this case.[2]

### III. CONCLUSION

For the reasons discussed above, Coastal's motion to dismiss CULS's complaint for lack of personal jurisdiction is **DENIED**.

**SO ORDERED**.

September 14, 2010.

                                                */s/ A. Joe Fish*
                                                **A. JOE FISH**
                                                **Senior United States District Judge**

---

[2] In its Brief in Support and its Reply, the defendant suggested that if the court does not grant the instant motion to dismiss, it can *sua sponte* transfer the case to a district court in North Carolina. The court declines to do so. This decision does not foreclose the defendant's ability to move for a change of venue under 28 U.S.C. § 1404 if it chooses to do so.